U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed July 21, 2006            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CONSOLIDATED COTTON GIN CO., | § | CASE NO. 05-50630-RLJ-11 |
| INC. | § | |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION

Consolidated Cotton Gin Co., Inc. ("Consolidated Cotton") moves under section 506(c) of the Bankruptcy Code to surcharge secured property to recoup the following expenses incurred by it in this chapter 11 case: (1) attorney's fees of Mullin, Hoard & Brown, L.L.P. ("Mullin, Hoard"), counsel for Consolidated Cotton, in the amount of $30,289.96; (2) accountant's fees of Robinson, Burdette, Martin & Seright, L.L.P. ("Robinson, Burdette") in the amount of $11,575; (3) administrative claims in the amount of $18,000 for materials and services provided by "vendors, suppliers, or other creditors . . . ;" and (4) ad valorem taxes in the amount of $47,000.

Consolidated Cotton submits that such expenses are reasonable, necessary costs and expenses of preserving or disposing of certain secured property and thus benefitted the secured creditors. The affected secured creditors, Bradford L. Moore Trustee ("Moore"), the Internal Revenue Service ("IRS"), and Beal Service Corporation ("Beal"), each objected to Consolidated Cotton's motion. Hearing was held on March 21, 2006.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

## **Background**

This chapter 11 case was filed on May 20, 2005. On September 17, 2005, Consolidated Cotton filed its original plan of reorganization and accompanying disclosure statement. The plan was set for a confirmation hearing on December 8, 2005. The original plan classified creditors such that Moore was designated as a first lienholder on substantially all of the assets of the bankruptcy estate, Beal was recognized as a second lienholder on the same assets, and the IRS was recognized as holding a third lien position. Both the IRS and Beal objected to confirmation of the original plan and, specifically, to the proposed priority and classification of their claims. The December 8, 2005 confirmation hearing was continued. On December 13, 2005, Consolidated Cotton filed its complaint to determine the lien priorities against the various assets of the debtor as among Moore, the IRS, and Beal.

The parties resolved their differences concerning the relative priorities of liens and the treatment to be accorded them in the plan. These agreements were incorporated into the Agreed Fifth Order Granting Debtor's Expedited Motion for Authority to Use Cash Collateral and to

Provide Adequate Protection to Secured Creditors (the "Fifth Cash Collateral Order"), which was entered by the Court on December 29, 2005. Under the Fifth Cash Collateral Order, Consolidated Cotton was directed to file and pursue confirmation of a liquidating plan that reflected the agreed upon lien positions of the respective secured creditors. Attached to the Fifth Cash Collateral Order is a cash flow projection approved by the secured creditors – Moore, the IRS, and Beal – that contemplated the debtor's payment of $15,000 in attorney's fees and $3,600 of accountant's fees for the period from January 1, 2006, to February 16, 2006, the date of the reset confirmation hearing. Consolidated Cotton's plan was in fact confirmed at the confirmation hearing held on February 16, 2006. The plan is a liquidating plan that provides that Moore, Beal and the IRS are the only creditors that receive payment (or property) from liquidation of Consolidated Cotton's assets. Moore is conveyed the real property consisting of the manufacturing plant and facilities, all machinery and equipment, and all intellectual property and other personal property of Consolidated Cotton, as well as a specific list of inventory constituting approximately four percent of Consolidated Cotton's inventory. These assets were estimated in the plan to have a value in excess of $2 million. Beal and the IRS receive, respectively, sixteen percent and eighty-four percent of the net proceeds collected by a liquidating trustee appointed under the plan (the "Liquidating Trustee") from the sale of Consolidated Cotton's inventory and collection of its accounts receivable. The plan states that these assets are anticipated to have a liquidation value of between $1 million and $2 million.

      In addition to the conveyance of the manufacturing plant and facilities to Moore, the plan also provides that Beal will be conveyed the real property located at 30th Street and Avenue D in

Lubbock, Texas. During January 2006, Consolidated Cotton paid Lubbock Central Appraisal District ad valorem taxes in the amount of $47,127.50 against these various items of real estate.

The Court entered orders on February 24, 2006, approving final compensation and reimbursement of expenses for both the counsel (Mullin, Hoard) and the accountants (Robinson, Burdette) for the debtor. The orders direct that the remaining amounts owing counsel for the debtor of $30,289.96, along with amounts owing the accountants for the debtor of $11,575, will be paid, if at all, by the Liquidating Trustee and upon further order of the Court.

At the hearing on March 21, 2006, on the present motion, the request for surcharge was amended to request $15,000 in attorney's fees and $3,600 for accountant's fees, which amounts represent the sums arguably approved for payment under the Fifth Cash Collateral Order. In addition, Consolidated Cotton dropped its request to surcharge for the $18,000 owed to vendors, suppliers, or other such creditors. The issue before the Court, therefore, is whether it is appropriate to surcharge property either being conveyed to secured creditors or securing the claims of secured creditors to the extent of $15,000 for attorney's fees, $3,600 for accountant's fees, and $47,506.64 for ad valorem taxes.

Consolidated Cotton and its attorneys Mullin, Hoard contend that the efforts of counsel and the accountants provided a quantifiable benefit to the secured creditors, thereby justifying the surcharge. They argue that the secured creditors acknowledged such benefit to the extent they consented to Consolidated Cotton's payment of professional fees and expenses under the Fifth Cash Collateral Order. Consolidated Cotton also contends that the secured creditors benefitted to the extent of its payment of the ad valorem taxes. Moore objects to the surcharge, contending that as to the real property collateral securing his claims, such property has been

- 4 -

transferred to him pursuant to the plan and thus there is no property or funds in which he has an interest that can be subject to a surcharge. He also contends that it is improper to surcharge for payment of ad valorem taxes because Consolidated Cotton was using the real property and thus benefitting from it during the year in which the ad valorem taxes were incurred. Moore argues, in the alternative, that if Consolidated Cotton is allowed to surcharge him by, in effect, billing him for any of the amounts requested, he should be allowed to offset such charges to the extent he paid for insurance on property being used by Consolidated Cotton that secured his claim. In short, Moore opposes paying out-of-pocket for any of the requested items.

The IRS objects to any surcharge, contending that the expenditures for any of the items requested were neither necessary nor of any real benefit to the IRS. The IRS states that "[t]he services were incurred directly, and primarily, to assist the debtor to reorganize and maintain ownership of the [business]." The IRS denies that it consented under the Fifth Cash Collateral Order to bearing the costs of professional fees incurred by Consolidated Cotton and sought by the present motion. With respect to the ad valorem taxes, the IRS submits that its lien covered inventory and accounts receivable and therefore should not be affected by the payment of any ad valorem taxes on real property and improvements. Beal adopts the arguments made by the IRS and, in addition, submits that the expenses sought to be recovered by Consolidated Cotton are general expenses of administration which benefit only the debtor and thus are not properly subject of a surcharge.

## Discussion

(1) Surcharge for Professional Fees and Expenses

Mullin, Hoard and Robinson, Burdette want to be paid. The motion before the Court is, as a practical matter, their effort to create a means of payment. It is couched in terms of a "surcharge" under section 506(c) of the Bankruptcy Code. A surcharge under section 506 contemplates the use of a secured creditor's collateral as a source of funds for paying the "reasonable, and necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the [secured creditors]. . . ." 11 U.S.C. § 506(c). The request here is broader, however. Consolidated Cotton includes a request that the Court direct the secured creditors, or any one of them, to actually pay a portion of the requested fees and expenses, in effect billing the secured creditors, at least in part, for the fees and expenses. The Court is not aware of any authority that allows the debtor to essentially bill the secured creditors for a portion of the professional fees incurred. And, at least in the context of the present case, billing the secured creditors for the debtor's fees and expenses is not the same thing as generating funds from the secured creditors' collateral.

The question, then, is whether the funds presently held by the Liquidating Trustee under Consolidated Cotton's confirmed plan can be used to pay the fees and expenses requested here. As noted, Consolidated Cotton amended its request to allow the payment for the amount of the fees and expenses authorized by the Fifth Cash Collateral Order.

As set forth above, the Fifth Cash Collateral Order was signed by the Court on December 29, 2005, the same date as the hearing on Consolidated Cotton's motion seeking authority for the continued use of cash collateral. The Fifth Cash Collateral Order sets forth the agreement reached between Consolidated Cotton and the secured creditors regarding the debtor's continued use of cash collateral. It provides in relevant part as follows:

[T]he Debtor has been able to negotiate with Bradford L. Moore, Trustee, the Internal Revenue Service and Beal Service Corporation and reach an agreement with them upon terms that would allow the Debtor the continued use of cash collateral until February 16, 2006, as well as the withdrawal of the Motion to Dismiss.

    11. The specific terms of the agreement between the parties for the continued use of cash collateral are set forth in the paragraphs below, however, the consensual continued use of cash collateral is predicated upon the respective parties taking the following actions:

    a. The Debtor will file and pursue confirmation of an amended plan of reorganization providing for liquidation of estate assets that will be considered for confirmation at the hearing previously scheduled for February 16, 2006, that will provide for treatment of the claims of the secured creditors in the following manner:

    i. Bradford L. Moore, Trustee, will be distributed or conveyed, pursuant to the terms of the liquidating plan, free and clear of all liens and encumbrances, all of the Debtor's real property against which Bradford L. Moore holds a first lien, which is generally described as the plant and facilities excluding the lot located at 30th Street and D Avenue in Lubbock, Texas, as well as all furniture and fixtures, all equipment, the two vehicles against which Bradford L. Moore, Trustee, holds a certificate of title lien, all of the intellectual property, tooling, jigs, and fixtures, including dies and other property either in the possession of the Debtor or third parties, and the items of inventory listed on the attached Exhibit "A," (which are estimated to have a value of approximately 4% of the Debtor's total inventory value);

    ii. The Internal Revenue Service and Beal Service Corporation will be conveyed, or at their option, the assets will be transferred and assigned to a Liquidating Trust, all remaining inventory not conveyed to Bradford L. Moore, Trustee, with the IRS receiving 80% of the inventory value and Beal Bank receiving 16% of the inventory value, plus the

- 7 -

                accounts receivable against which each holds the superior lien position;

    b.    The Debtor will, during the period of time covered by this Agreed Order on Continued Use of Cash Collateral, preserve the value of its inventory by ensuring that all sales are made for no less than its usual and customary pricing;

. . .

    e.    Nothing under the terms of this Agreed Order on Continued Use of Cash Collateral, however, shall prevent any of the Secured Creditors affected by its terms from objecting to confirmation of the amended plan of reorganization providing for liquidation of estate assets nor from objecting to the treatment afforded their respective claims in such amended plan.

    12.    Based upon the foregoing conditions, the Court hereby grants Debtor's continued use of cash collateral pledged or allegedly secured by Bradford L. Moore, Trustee, Beal Service Corporation, and the IRS (collectively referred to as "Secured Creditors") as limited by this Order until February 16, 2006. The Debtor's cash uses authorized for the period shall conform to the Debtor's cash flow projections listed on Exhibit "B". Such cash flow projections will be used for all purposes associated with this Order and the uses of the cash shown on such projections may exceed any line item in the cash flow projection by not more than ten percent (10%) and the use may exceed the actual cash flow projection by ten percent (10%) without a variance.

    13.    The Debtor shall continue to deposit all of the cash collateral in the Debtor's possession, custody or control and which the Debtor may receive in the future, in accounts in the name of the Debtor, which will subsequently be styled as "Debtor-in-Possession accounts" (the "Cash Collateral Accounts"). The Debtor shall pay out of the Cash Collateral Accounts only the expenses shown on the cash flow projections listed on Exhibit "B" and only by checks written from and on the Cash Collateral Accounts. Debtor is prohibited from withdrawing funds from the Cash Collateral Accounts except to fund the approved expenses as provided for in the cash flow projections listed on Exhibit "B".

. . . .

    15.    As adequate protection of the Secured Creditors' interest in the property, collateral, and cash collateral in accordance with 11 U.S.C. §§ 361 and 363(e) and applicable law, the Secured Creditors' (sic) are hereby granted

> continuing replacement like kind liens and security interests, if any, in all of the property of the estate of the kind presently securing the indebtedness owing to the Secured Creditors in accordance with 11 U.S.C. § 361(2) in the same priority and in the same nature, extent and validity as such liens existed pre-petition. To the extent a lien is created in accounts receivable and assets received, accruing or becoming the Debtor's property on a post-petition basis, such lien shall extend only to protect the Secured Creditors for the amounts of cash collateral used on a post-petition basis. . . . Furthermore, to the extent the adequate protection granted to Secured Creditors herein proves to be inadequate, then the creditor's claim associated with such failure shall be given priority over every other allowable claim entitled to distribution under section 507(a) as is provided for under the provisions of section 507(b).

Ex. 4, Fifth Cash Collateral Order. Consolidated Cotton performed just as required under the Fifth Cash Collateral Order and obtained confirmation of its liquidating plan at the hearing held February 16, 2006. It was therefore entitled to the use of cash collateral during the time frame of December 29, 2005, through February 16, 2006, in accordance with the Fifth Cash Collateral Order. That the secured creditors reserved the right to object to the plan underscores their explicit agreement and consent to the Consolidated Cotton's use of cash collateral. The allowable expenses were set forth on the multi-week cash flow attached as Exhibit B to the order. The cash flow specifically reflects expenses of $2,500 a week for attorney's fees and $600 a week for accountant's fees. It is from this that Consolidated Cotton derives its request to pay through surcharge the $15,000 in attorney's fees and $3,600 in accountant's fees. Expenses are labeled as "projected," but the order allowed a minor variance from the projected expenses.

At the hearing, IRS's counsel argued that since payment of the attorney's fees of $2,500 a week and accountant's fees of $600 a week had not actually been made at the time of the hearing on the motion before the Court, it was improper to authorize the payment after the fact, i.e. after February 16, 2006. However, as Consolidated Cotton pointed out in its motion, the Bankruptcy

Rules and procedures dictate that professional fees for attorneys and accountants must be approved by the Court upon proper application and notice. Proper application was made and the reasonableness of the attorney's fees and accountant's fees were approved by the Court's orders of February 24, 2006. The Court agrees with the IRS to the extent fees and expenses were not *incurred* during the December 29, 2005, to February 16, 2006, time frame. However, it cannot be seriously questioned whether the parties agreed to Consolidated Cotton's continued use of encumbered funds to pay its attorney's and accountant's fees incurred in getting Consolidated Cotton's plan to confirmation. The Fifth Cash Collateral Order set a limit on the amount of fees and expenses that could be incurred during this time frame and the Court infers that such fees and expenses, projected at the time, must have actually been incurred during the time frame covered by the order. The invoices introduced into evidence set forth an itemization of when services were provided, the nature of the services, and the time expended in providing the services. Exs. 12, 13. To the extent the invoices reflect services provided from December 29, 2005, to February 16, 2006, such fees and expenses constitute those allowable under the Fifth Cash Collateral Order.

The Fifth Cash Collateral Order provides that if the adequate protection, i.e. the replacement liens, proves to be inadequate, then the affected creditor is granted a super priority administrative lien under section 507(b) of the Bankruptcy Code. It may be argued that allowing the payment of fees here improperly trumps any potential super priority administrative claim. The Court disagrees with any such argument. To the extent that a section 507(b) claim (the super priority administrative claim) must be paid before a regular administrative claim under section 507(a) of the Bankruptcy Code, allowance of the payment by the Court here is not contrary to

the terms of the Code and the Fifth Cash Collateral Order. The effect of the payment of the fees and expenses here out of cash collateral is still purely hypothetical. It has not been paid, hence the reason for the motion and the request for payment. By allowing payment now from available funds does not contradict the Fifth Cash Collateral Order or the Code. The payment is from encumbered funds and thus, indirectly, from the affected secured creditor. A secured creditor's claim must be paid before any administrative claim is paid. Subsections (a) and (b) of section 507 prioritize payments from unencumbered funds. The secured creditors agreed to the payment of these expenses to the extent they were actually incurred. If, after payment, it is determined that the replacement liens proved inadequate to cover the use of the cash collateral during the relevant time frame, then such secured creditor can request allowance of a super priority administrative claim under section 507(b) of the Bankruptcy Code.

The Court must also address certain provisions of the order confirming Consolidated Cotton's liquidating plan that are pertinent to the present issue before the Court. In this regard, the order states as follows:

> <u>Modifications to Resolve Objections of the IRS:</u>
> . . . .
>
> [A]ll cash and accounts receivable, with the exception of sufficient cash representing deposits from accounts receivable collected prior to 9:00 a.m. on the date of the confirmation hearing that are necessary to cover checks written by the Debtor up through 9:00 a.m. on February 16, 2006, will be transferred and assigned to the Liquidating Trust, and such accounts receivable and cash will then be collected and administered by the Liquidating Trustee, Mr. Max Tarbox. None of the cash nor the accounts receivable will be used by the Liquidating Trustee to pay administrative claims of the attorney for the Debtor nor the accountant for the Trustee, nor any other administrative claims that were not paid as of the date and time of the confirmation hearing. The Court has scheduled a hearing to consider the Motion of IRS for Allowance of Administrative Expense and Super Priority Administrative Expenses for March 21, 2006, and will consider any motions filed

>by the Debtor and its attorneys or accountants for allowance of any claims
>asserted under the provisions of Section 506(c) at the same time. However, until
>such time as the Court rules upon the motion of the IRS for a super priority
>administrative expense under Section 507(b), and such claim is paid, or until the
>Court approves compensation and reimbursement under the provision of Section
>506(c), then no funds shall be expended by the Liquidating Trustee for the
>payment of any unpaid administrative expenses. The IRS has agreed to such
>technical modifications and they resolve its objections on these grounds.

Agreed Order Modifying and Confirming Debtor's First Amended Plan Providing for the Liquidation of Estate Assets at 4. The net effect of the confirmed plan, coupled with the Fifth Cash Collateral Order, was to hold in abeyance the actual payment of the professional fees until this Court has had an opportunity to decide the matter. The Court does not construe the provisions of the order confirming plan to prohibit the payment by the Liquidating Trustee to Mullin, Hoard and Robinson, Burdette.

The Court concludes, therefore, that the secured creditors specifically agreed to Consolidated Cotton's payment from cash collateral of the attorney's and accountant's fees and expenses incurred from December 29, 2005, to February 16, 2006. The Court is also of the opinion that the authorization of such payment comports with section 506(c) of the Bankruptcy Code. A surcharge under section 506(c) has been characterized as an assessment against a secured party's collateral. *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1067 (9th Cir. 2001). By agreeing to the use of cash collateral for such purpose, the secured creditors effectively announced up front that they expected to derive some meaningful benefit from the expenditure of the cash collateral for the allowable expenses. 4 COLLIER ON BANKRUPTCY ¶ 506.05[6] (15th ed. rev. 2005) (citing *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1067 (9th Cir. 2001).

(2) Surcharge for Ad Valorem Taxes

The issue concerning the allowance of a surcharge to reimburse the debtor for payment of the ad valorem taxes is somewhat different than the issue concerning payment of professional fees and expenses. Unlike the proposed payment of professional fees and expenses, Consolidated Cotton has paid the ad valorem taxes for which it seeking reimbursement. The Court does not find the requisite *direct* benefit required to warrant a surcharge for the ad valorem taxes.

The Fifth Circuit provided its interpretation of section 506 (c) in *In re Grimland, Inc.*, 243 F.3d 228, 233 (5th. Cir. 2001), where it said "[w]e have interpreted this language to require a *quantifiable and direct benefit to the secured creditor; indirect or speculative benefits may not be surcharged, nor may expenses that benefit the debtor or other creditors*. The default rule in bankruptcy is, accordingly, that administrative expenses are paid out of the estate and not by the secured creditors of the debtor." (emphasis added). This is the same standard applied by the Bankruptcy Court for the Southern District of Texas in *In re Mort Hall Acquisition, Inc.*, 181 B.R. 860 (Bankr. S.D. Tex 1994) ("Incidental benefits derived from property taxes do not trigger section 506(c); the benefits to secured creditors must be direct and quantifiable.") and the Bankruptcy Court for the Eastern District of Texas in *In re Westwood Plaza Apartments, Ltd.*, 154 B.R. 916 (Bankr. E.D. Tex. 1993) ("To charge a secured creditor with the administrative expenses under § 506(c), there must be a showing that the fees and expenses were: (1) necessary, (2) reasonable, and (3) incurred primarily for the benefit of the secured creditor resulting in a quantifiable direct benefit to the secured creditor.").

Paying the ad valorem taxes incurred while in possession of the property against which the taxes are assessed does not satisfy the direct benefit test articulated by the courts. *See In re C.S. Assocs.*, 29 F.3d 903, 907 (3rd Cir. 1994). Consolidated Cotton owned the property and was using it in its operations and was therefore legally obligated to pay the ad valorem taxes. Authorizing a surcharge for the ad valorem taxes would be more of a windfall than a reimbursement to Consolidated Cotton. It would also be analogous to allowing a debtor to surcharge an inferior lienholder on property to the extent the debtor made payments on a prior lienholder's claim. The addition of paid ad valorem taxes as an expense potentially subject to reimbursement by the amendments to section 506(c) and does not alter the Court's conclusion on this issue.[1]

### Conclusion

The Court grants the surcharge and thus the payment by the Liquidating Trustee of the fees and expenses of Mullin, Hoard and Robinson, Burdette to the extent such fees and expenses were authorized under the Fifth Cash Collateral Order and were actually incurred as reflected on invoices submitted by Mullin, Hoard and Robinson, Burdette, such invoices introduced as exhibits 12 and 13. The surcharge, and thus payment, is denied regarding the request for reimbursement of paid ad valorem taxes. All other relief requested is denied.

### End of Memorandum Opinion ###

---

[1] Section 506(c) of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 now states as follows: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, *including the payment of all ad valorem property taxes with respect to the property.*" (emphasis added). BAPCPA applies to cases filed on or after October 17, 2005. As this chapter 11 case was filed on May 20, 2005, BAPCPA is not applicable.